IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| KELLI MADRID,                             :<br>                                                        :<br>     Plaintiff,                                  :<br>                                                        :<br>v.                                                    :     CASE NO.: 1:14-CV-29 (WLS)<br>                                                        :<br>HOMELAND SECURITY SOLUTIONS   :<br>INC.,                                              :<br>                                                        :<br>     Defendant.                             :<br>_____:| |

## ORDER

Before the Court is Defendant Homeland Security Solutions, Inc.'s Motion for Summary Judgment against Plaintiff Kelli Madrid. (Doc. 44.) For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## PROCEDURAL BACKGROUND

On February 19, 2014, Plaintiff filed her Complaint against Defendants Homeland Security Solutions, Inc., Holly David, and Sean Lamonzs. (Doc. 1.) Therein, Plaintiff claims Defendants created a hostile work environment as a result of their sexual harassment, that Defendant Homeland Security Solutions, Inc. retaliated against Plaintiff after she reported to the Equal Employment Opportunity ("EEO") office at the Albany Marine Corps Base that she was sexually harassed, and that Defendants negligently and wrongfully retained employees in violation of Georgia law. (*Id.*) On March 31, 2014, the Court approved Plaintiff's Stipulation voluntarily dismissing Holly David as a party. (Doc. 10.) On April 17, 2015, Defendant Lamonzs filed a Motion to Dismiss. (Doc. 13.) On November 10, 2014, the Court granted Defendant Lamonzs's Motion to Dismiss. (Doc. 37.) As a result, the only remaining Defendant in this case is Homeland Security Solutions, Inc. ("Defendant").

1

On February 20, 2015, Defendant filed the pending Motion for Summary Judgment. (Doc. 44.) On March 13, 2015, Plaintiff filed her Response to Defendant's Motion for Summary Judgment and Statement of Undisputed Facts. (Doc. 54.) On April 13, 2015, Defendant filed a Reply. (Doc. 58.) Since the briefing period has closed, the Court finds that Defendant's Motion is ripe for review.

## SUMMARY JUDGMENT STANDARD

### I.      Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when a party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 Fed. App'x 842, 847 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present

evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### II. **Local Rule 56**

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Defendant filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Doc. 44.) Likewise, Plaintiff timely filed her response to Defendant's statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Doc. 54.) Having established the applicable standards, the Court will now proceed with reviewing the merits of Defendant's Motion.

## FACTUAL BACKGROUND[1]

The facts provided to the Court by the parties offer two starkly different narratives of Plaintiff's employment with Defendant. Defendant emphasizes facts and provides a narrative to the effect that Plaintiff was unable to act in accord with Defendant's privacy policy after several warnings, which ultimately resulted in her termination. Plaintiff, on the other hand, stresses facts and provides a narrative to the effect that Plaintiff was largely applauded for her work performance in the midst of constant sexual harassment obvious to her supervisors and coworkers. After reviewing the facts relied upon by both parties, the Court concludes that the record could support the establishment of the following facts.

Defendant is a private security corporation that trains and supplies security personnel to military bases in several states. (Doc. 1 at ¶ 6.) In July 2009, Plaintiff was first employed by Defendant to work as a General Clerk at the Marine Corps Logistics Base in Albany, Georgia ("Albany base"). (Doc. 44-1 at ¶ 1; Doc. 52-1.) Throughout most of her employment with Defendant, Plaintiff was supervised by Holly David, Defendant's Site Supervisor at the Albany base. (Doc. 44-1 at ¶ 2.) David alerted Defendant's employees that she was the "sole supervisor" at the Albany base and outlined the chain of command within Defendant's company soon after Plaintiff was hired. (*Id.* at ¶ 3.) On September 8, 2009, David recorded in writing a prior conversation with Plaintiff in light of "negative discussions

---

[1] The following facts are derived from the Complaint (Doc. 1), Defendant's Statement of Undisputed Facts (Doc. 44-1), Plaintiff's Response and Statement of Undisputed Facts (Doc. 54-1; Doc. 54-2), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff, as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[Plaintiff had] regarding pay and job duties within the office" and noted that she reminded Plaintiff that all classified information should remain private. (*Id.* at ¶ 8; Doc. 44-3 at 23.) Soon thereafter, David also informed Plaintiff that if she had any concerns about David's role as site supervisor, she could report them to Defendant's high-level managers and reiterated Defendant's chain of command. (Doc. 44-1 at ¶ 11.)

For the most part, during the early stages of her employment, Plaintiff received high marks for her performance as an employee for Defendant. (Doc. 44-1 at ¶¶ 5-6.) During Plaintiff's October 21, 2009 performance evaluation, David rated Plaintiff's job performance above average in most categories. (Doc. 44-3 at 14-17.) Plaintiff's performance evaluation mentioned that David was "concerned with [Plaintiff's adherence to] boundaries", including her disclosure of information and sharing of her personal opinion. (*Id.* at 17.) Plaintiff's evaluation specifically noted her "negative talk" about Command, but acknowledged that Plaintiff was a "hard worker" who "meets tasks full force." (*Id.*) On May 11, 2010, Plaintiff received notice of her promotion from General Clerk to Personnel Assistant. (Doc. 50-5.) In November 2010, police officers for the Albany base ("Command") recommended that Plaintiff be removed from handling internal promotions within the police department. (Doc. 44-1 at ¶ 14; Doc. 54-1 at ¶ 14.) A month later, in December 2010, Plaintiff was asked to sign a Nondisclosure Acknowledgement Agreement drafted by Command that prohibited Plaintiff from disclosing HR information and instructed her to guard personnel information with strict confidentiality. (Doc. 54-1 at ¶ 16; Doc. 50-10.) From May 2011 to February 2013, Plaintiff was assigned to work for Mr. McNulty, the Albany base Director of Public Safety, in an office away from the Albany base Police Department. (Doc. 54-2 at ¶ 26.) During that time, Plaintiff claims she did not interact with many members of Command other than McNulty. (Doc. 50 at 71 ¶ 16.) Plaintiff's performance evaluation on August 11, 2011, consistent with her past performance evaluations, noted her efficiency in completing tasks and the neatness of her work. (Doc. 44-3 at 20.) Plaintiff's August 11, 2011 report also stated "[Plaintiff] should continue to safeguard information and remain conscience [*sic*] of her communication due to the nature of the job." (*Id;* Doc. 44-1 at ¶ 21.)

5

On December 8, 2011, David prepared a coaching report that addressed an email sent by Plaintiff that included Plaintiff's personal comments on how "the [police] department wasn't doing their job in a timely manner." (Doc. 44-3 at 33.) David noted in Plaintiff's report that this email was sent using "the incorrect email chain of command and with improper etiquette." (*Id*.) Plaintiff's 2012 performance again suggested that she remained "consistent in her job" and that she "should continue to maintain a position of trust within the department and remain keeping personal opinions out of conversations with the Command." (Doc. 44-3 at 22.) While still employed with Defendant, Plaintiff decided to apply for a police officer position in 2012. (Doc. 44-5 at ¶ 6.) Plaintiff also married Greg Madrid, a police officer for the Albany base, soon after applying for a police officer position.

According to Plaintiff, her work performance and Defendant's records only tell part of the story of Plaintiff's employment. Throughout her employment, particularly when she returned from working with McNulty, Plaintiff claims she was subjected to sexual harassment on an almost daily basis. (Doc. 54-2 at ¶¶ 32, 33.) Conversations regarding sex, largely by male counterparts, apparently took place often in front of David. (Doc. 54-2 at ¶¶ 35-30.) Plaintiff specifies numerous instances, including: (1) hearing Deputy Police Chief Lamonzs ("Deputy Chief Lamonzs") use "CAB", short for crazy ass bitch on numerous occasions; (2) overhearing David discuss doing Kegel exercises; (3) discussions regarding former police employee and female, Tiffany Meyers-Smith, being passed around; (4) being asked what color her panties were; (5) being told that additional females out there getting hurt was not needed in response to Plaintiff's interest in the police department; (6) being smacked on the rear end maybe five times over the span of a couple years; (7) overhearing a conversation between Deputy Chief Lamonzs and Daryl Walker having a discussion about a '69' act with an overweight woman; (8) overhearing a conversation between Knox and Reynolds suggesting they wished "all ex-wives were dead on the side of the road; and (9) being told male employees could see the outline of Plaintiff's vagina through her pants." (Doc. 50 at 76, 87-96, 112-118, 100-107, 123-127, 207, 212-217, 222.) Plaintiff claims she reported some of the sexual actions and comments made while she was at work to David and no action was taken. (Doc. 54-2 at ¶ 71.) Defendant argues Plaintiff never complained

6

of or commented on being harassed while employed for Defendant. Defendant also notes that during Plaintiff's employment there existed an Anti-Harassment policy included in all Employee Manuals prohibiting sexual harassment and requiring employees to report any harassment as soon as possible. (Doc. 44-1 at ¶¶ 41-42.)

On April 16, 2013, Plaintiff went to the EEO Office at the Albany base and filed a complaint for sexual harassment. (Doc. 50-15.) During her interview, amongst other things, Plaintiff mentioned comments made about Tiffany Meyer-Smith being passed around the department, comments made about killing ex-wives, and comments made regarding additional females not needing to work for law enforcement. (Doc. 50-16; Doc. 54-2 at ¶ 75.) On or around May 20, 2013, Plaintiff then had a conversation with Police Chief Randy Jack ("Chief Jack") addressing her concerns with the sexual harassment she confronted while employed. (Doc. 50 at 81-82; Doc. 54-2 ¶¶ 76-78.) After Plaintiff's conversation with Chief Jack, the harassing conduct and comments stopped so Plaintiff withdrew her EEO complaint. (Doc. 50 at 84-85; Doc. 50-17.) Around that time, David and Deputy Chief Lamonzs also met with Plaintiff and were assigned to investigate the complaint. (Doc. 50 at 86.) In May, the same month Plaintiff withdrew her EEO complaint, Plaintiff was offered a position as a police officer at the Albany base. (Doc. 54-1 at ¶¶ 76-77.) Plaintiff turned down the police department's offer because she did not want to be in the same career field as her husband. *Id.*

Plaintiff claims she incurred a series of write-ups after she withdrew her EEO complaint. (Doc. 54-2 at ¶ 84.) David states that she was told by Chief Jack and Deputy Chief Lamonzs that they questioned whether they could trust Plaintiff given comments made by Plaintiff during the June 2013 HR training to the Executive Director for Marine Corps Police Academy East on the protocol of how officers were selected at the Albany base. (Doc. 44-1 at ¶ 24; Doc. 44-3 at ¶ 21.) David indicates that neither Chief Jack nor Deputy Chief Lamonzs were pleased with Plaintiff's alleged comments to the Executive Director. (*Id.*) In July 2013, Plaintiff was written up for commenting to a colleague that she was running on "colored people time" as well as stating to David that "if it was legal to kill, then [she] would have already killed Greg's ex-wife." (Doc. 54-2 at ¶¶ 86-90.) Based on these

7

comments, on July 30, 2013 Defendant's Vice President, Michael Kernan, decided that Plaintiff should be suspended for forty hours. (Doc. 54-2 ¶ 91.) That same month, David also claims she received information about Plaintiff expressing her concern to Officer Perry Mixon and Master Sergeant Adam Iudiciani about a directive Plaintiff's husband received to not drive in his police car with Plaintiff since she was an employee for Defendant. (Doc. 50 at 181.) Sometime thereafter, both Deputy Chief Lamonzs and David remember a conversation that took place between the two of them and Chief Jack discussing their inability to trust Plaintiff with information any longer. (Doc 44-1 at ¶¶ 31-32; Doc. 44-3 at ¶ 21; Doc. 44-5 at ¶ 7.) David claims that during her conversation with both Deputy Chief Lamonzs and Chief Jack they both indicated that they would not object to Plaintiff being terminated. (*Id.*)

Around July or August 2013, David recommended that Plaintiff be terminated based on prior comments regarding Command's inability to trust her. (Doc. 44-3 at ¶ 24.) After receiving this information, Vice President Kernan decided to terminate Plaintiff from her job. (Doc. 44-1 at ¶ 37; Doc. 44-4 at ¶ 7.)

### DISCUSSION

Defendant contends they are entitled to summary judgment as it relates to Plaintiff's hostile work environment, retaliation, and negligent retention claims. The Court will consider each of Plaintiff's claims in turn.

### I. Plaintiff's Hostile Work Environment Claim

Plaintiff's complaint asserts that "[t]hroughout the entire period of Plaintiff's employment" with Defendant she was subjected to a "sexually hostile work environment" in violation of Title VII, 42 U.S.C. § 2000e, *et. seq.* (Doc. 1 at ¶ 42.) Title VII makes it unlawful for employers to discriminate "with respect to [an employee's] compensation, terms, or privileges of employment" on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Although Title VII does not mention sexual harassment, the Supreme Court and Eleventh Circuit have long held the phrase "terms, conditions, or privileges of employment" prohibits it. *Mendoza v. Borden, Inc.*, 195 F.3d 1239, 1244 (11th Cir. 1999) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). To establish a *prima facie case*

for hostile work environment as a result of sexual harassment, a plaintiff must establish that: (1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the conduct was based on the sex of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for said environment under either a theory of direct or vicarious liability. *Mendoza*, 195 F.3d at 1245. "Although Title VII's prohibition of sex discrimination clearly includes sexual harassment, Title VII is not a federal 'civility code.'" *Id.* (citations omitted). There is no dispute between the parties that Plaintiff, a female, is recognized as part of a protected class under Title VII. Defendant instead argues Plaintiff is unable to prove any of the remaining elements necessary to prove a *prima facie case* for hostile work environment as a result of sexual harassment. The Court will consider each of Defendant's arguments.

### A. Plaintiff's claim she was subjected to unwelcome harassment

Defendant moves the Court to grant summary judgment as it relates to Plaintiff's hostile work environment claim since the alleged harassment was not unwelcome. Although Defendant makes this argument, Defendant concedes that at least one instance of unwelcome harassment arguably existed. "In order to constitute harassment, the conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *EEOC v. SDI Athens East, LLC.*, 690 F.Supp.2d 1370, 1377 (M.D. Ga. 2010) (citing *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982)).

A statement can be deemed undesirable or offensive if a fact finder could determine that a plaintiff indicated that the conduct in question was unwelcome. *Meritor Sav. Bank, FSC v. Vinson*, 477 U.S. 57, 68 (1986). It is not uncommon for courts to decide whether harassing conduct is unwelcome based on case specific credibility determinations. *Id.* Ultimately, in determining whether conduct can be deemed unwelcome, a court must evaluate the alleged harassment and the context in which it occurred taking into consideration the totality of the circumstances. *Otu v. Papa John's USA, Inc.*, 400 F.Supp.2d 1315, 1326 (N.D. Ga. 2005).

The record is rife with evidence that could suggest Plaintiff was subjected to unwelcome harassment. Plaintiff claims on more than one occasion she discussed the harassment she faced with David. Even if the Court were to accept Defendant's argument that Plaintiff responded only a small amount or to a small degree to the alleged harassment she confronted, there is not enough evidence to foreclose the possibility she in some way indicated through expression or action she was offended. Plaintiff mentions that after being slapped on the butt she quickly walked away. Such an action could, within a certain context, suggest that conduct of that nature was unwelcome. Given remaining questions regarding whether Plaintiff verbally or in some other manner expressed to Defendant the alleged harassment was unwelcome, Defendant's assertion there is no genuine issue of material fact regarding the unwelcome nature of alleged harassing conduct fails.

### B. Plaintiff's claim the harassing conduct was based on sex

Defendant further asserts the harassing conduct alleged by Plaintiff is not related to sex or is equally offensive to males and females and therefore not based on sex. For statements and conduct of an employer to create a sexually hostile work environment under Title VII, a reasonable inference must be drawn that it occurred because of sex. *Livingston v. Marion Bank and Tr. Co.*, 30 F. Supp.3d 1285, 1301 (N.D. Ala. 2014)(citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). In the Eleventh Circuit a plaintiff can establish that harassment was based on an employee's sex by showing that "but for the fact of her sex, she would not have been the object of harassment." *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).

The Court disagrees with Defendant that there are no facts that could arguably suggest harassment of a sexual nature existed in the case at hand. There are numerous instances alleged, that if true, could be construed by a trier of fact as harassing conduct based on sex. Plaintiff's allegations she was slapped or "smacked on the ass… in front of a group of people just to make them laugh" and being asked "what color her panties were", in addition to stories mentioning other sexual conduct, could be perceived as occurring as a result of her sex. Viewing these facts in a light most favorable to Plaintiff, a jury could conclude that Plaintiff was confronted with conduct her male counterparts were not faced with or would

10

not find equally offensive. As a consequence, Plaintiff's claim that Defendant's alleged conduct was harassment of a sexual nature is a genuine issue of material fact.

### C. Plaintiff's claim the harassing conduct was severe and pervasive

Defendant also contends that Plaintiff's harassment was neither severe nor pervasive. Courts decide whether an employer's alleged sexually harassing conduct is severe or pervasive after making both objective and subjective considerations. *Mendoza*, 195 F.3d at 1246. "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. The environment must be one that 'a reasonable person would find hostile or abusive' and that 'the victim ... subjectively perceive[s] ... to be abusive.'" *Id.* Defendant argues the alleged harassing conduct is not subjectively or objectively severe or pervasive.

### 1. Plaintiff's claim Defendant's conduct was subjectively severe and pervasive

There is sufficient evidence for a fact finder to conclude that Plaintiff perceived Defendant's conduct as severe and pervasive. Contrary to Defendant's assertion, the fact Plaintiff's work performance was not greatly affected by Defendant's alleged harassment does not preclude Plaintiff's hostile work environment claim in and of itself. Plaintiff's discussion of what she perceived as a sexually hostile work environment to Angelo Knox in the EEO office, Chief Jack, and David alone provide sufficient evidence for a trier of fact to conclude Plaintiff subjectively believed the conduct alleged was severe and pervasive.

The Court's determination is not affected by the cases Defendant relies on to suggest Plaintiff did not perceive the alleged harassment as severe or pervasive. In *Mack-Muhammad v. Cagle's Inc.*, 2010 WL 55912 (M.D. Ga. Jan. 4, 2010), the court dismissed plaintiff's hostile work environment claim under Title VII based on religious discrimination as a result of plaintiff's inability to prove defendant's conduct was objectively and subjectively severe and pervasive. *Mack-Muhammad* does not stand for the proposition that because an employee performs their job well while harassed, like Plaintiff alleges in this case, they foreclose the possibility that harassment could be viewed as subjectively severe and pervasive. *Mack-Muhammad* was decided largely on objective grounds since the court determined the

11

harassing conduct was not threatening. *Mack-Muhammad*, 2010 WL 55912, at \*5. Likewise, both *Murphy v. City of Aventura*, 383 Fed. App'x 915 (11th Cir. 2010) affirming a district court's decision and *Moore v. Treatment Ctrs. of Am. Grp., LLC*, 972 F.Supp.2d 1359 (M.D. Ga. 2013) granting summary judgment for defendants, both dismissed plaintiff's respective hostile work environment claim because no objectively reasonable rationale existed to view the alleged conduct as severe or pervasive. Neither court relied heavily on subjective grounds to make their decision.

Further, this case cannot be compared to a prior case referenced by Defendant and decided by this Court in *Hodge v. Federal Express Corporation*, 2013 WL 944435 (M.D. Ga. Mar. 7, 2013). In *Hodge*, plaintiff alleged that an employee was always gyrating around him, making comments about his legs, and rubbing against plaintiff while singing "Let's Get it On" by Marvin Gaye. *Hodge*, 2013 WL 944435, at \*6. Nevertheless, this Court granted defendant's summary judgment motion in *Hodge* because plaintiff admitted to, amongst other things, having a sexual and personal relationship with that same employee. In light of plaintiff's relationship with those responsible for the alleged harassing conduct, in addition to other related facts, the Court decided that plaintiff did not believe defendant's conduct was severe or pervasive. Here, no such relationship with Defendant's employees and Plaintiff existed that would cause the Court to conclude that Defendant's conduct was not severe or pervasive. As a result, the Court is unconvinced by Defendant's argument there is no triable issue as to the alleged harassing conduct being subjectively severe or pervasive.

**2. Plaintiff's claim Defendant's conduct was objectively severe and pervasive**

Defendant also argues that Plaintiff's claim that the conduct was objectively severe and pervasive is not supported. Determining whether conduct is objectively severe and pervasive is a fact intensive exercise. *Mendoza*, 195 F.3d at 1246. In evaluating allegations of harassment within the hostile work environment context courts are directed to look at: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (citations omitted). As noted by the Supreme Court, "[t]he real social impact of workplace behavior

often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, 523 U.S. at 82. In assessing the totality of the circumstances, courts can consider both conduct directed at the plaintiff and words not directed toward them. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 811 (11th Cir. 2010)("[W]ords and conduct that are sufficiently gender specific, and either severe or pervasive may state a claim of a hostile work environment, even if the words are not directed specifically at the plaintiff.") It should be noted, that Title VII is not intended to be a "general civility code" and "'simple teasing… offhand comments, and isolated incidents (unless extremely serious)' do no constitute a hostile work environment." *Guthrie v. Waffle House, Inc.*, 460 Fed. App'x 803, 806 (11th Cir. 2012)(citation omitted).

The Court finds that there remains a genuine issue of material fact as to the objective severity and pervasiveness of the alleged harassing conduct. Plaintiff contends that crude commentary, often times of a sexual nature, persisted on an almost daily basis. Plaintiff further provides the Court with several examples including hearing that former female employees were being "passed around the department", references to women as "CAB" short for "crazy ass bitch", questions regarding the color of Plaintiff's panties, being smacked on her butt in front of colleagues close to five times, and being told that male employees could see the outline of her vagina through her pants as examples of the conduct she endured. Evaluating the examples provided by Plaintiff along with other evidence, this is not an instance where the alleged harassment clearly happened intermittingly or can be definitively characterized as neither severe nor pervasive. While the Court acknowledges that Plaintiff's job performance appeared to remain strong throughout her time working for Defendant, in assessing the *Mendoza* factors that consideration alone is not dispositive.

Contrary to Defendant's suggestion, Defendant's reliance on cases in the Eleventh Circuit is illustrative of the fact-intensive nature of Title VII hostile work environment claims based on sex, not the creation of an "extraordinarily high" bar for cases of this nature. Further, Defendant's recitation of the cases cited in support of their position omits critical facts central to the courts' reasoning in those decisions.

*Guthrie v. Waffle House Incorporated.*, 460 Fed. App'x 803 (11th Cir. 2012), relied on by Defendant, is distinguishable from the case before the Court. While Defendant in this case fully noted the conduct of the plaintiff's supervisor and coworker in *Guthrie*, they left out important evidence regarding the relationship between the plaintiff and her supervisor and coworker. *Guthrie v. Waffle House Inc.*, 460 Fed. App'x at 806. In *Guthrie*, the plaintiff alleged that her coworker and supervisor made a few dozen sexually explicit remarks, grabbed her butt "two to five times", and approached plaintiff from behind while she was sitting on a stool and kissed her cheek, along with other "rude and boorish" conduct. *Guthrie*, 460 Fed. App'x at 804. The Eleventh Circuit also noted video evidence showing plaintiff and her coworker hugging and kissing and plaintiff's admission they had a sometimes playful and friendly relationship. *Id* at 806. Affirming the district court's decision granting defendants' summary judgment, the Eleventh Circuit determined that defendants' conduct was neither severe nor pervasive. *Id.* at 806-808. The Eleventh Circuit reasoned that plaintiff was not threatened or humiliated considering she voluntary kissed her coworker and had an often playful relationship him, that the alleged sexual harassment was intermittent considering she only worked a full shift with the coworker allegedly harassing her five times over the course of eleven months, and that the comments made to her over an eleven month period were relatively infrequent. *Id.* As a result, utilizing the *Mendoza* factors, the Eleventh Circuit found the alleged harassing conduct neither severe nor pervasive. *Id.*

Plaintiff in this case presents evidence that she was harassed on an almost daily basis, not just over five shifts or a relatively small percentage of her employment. Markedly different than *Guthrie*, there's no evidence in the record that infers a similar relationship between Plaintiff and a coworker to suggest any alleged harassing conduct was reciprocated by Plaintiff. The distinction between what a trier of fact could characterize as a strictly work relationship between Plaintiff and her co-workers, and the relationship plaintiff had with her coworker in *Guthrie*, is consistent with another inapplicable case cited by Defendant, *Sifuentes v. National Beef Packing Co., LLC.,* 2014 WL 4079933 (M.D. Ga., Aug. 18, 2014). In *Sifuentes*, plaintiff alleged that a coworker and employee for defendant touched and grabbed her several times during her four month employment, including grabbing "at her bottom".

14

*Sifuentes*, 2014 WL 4079933, at \*3. Nevertheless, the court granted defendant's summary judgment motion in part because, as plaintiff admitted, grabbing each other was "a kind of workplace game." *Id.* at \*8. The court in *Sifuentes* found that, given the playful work environment the alleged conduct was not threatening or harmful to plaintiff's employment and could not be classified as objectively severe or pervasive. *Id.* at \*8-9.

Similar to *Sifuentes* and *Guthrie*, *Mendoza v. Borden, Incorporated*, 195 F.3d 1238, 1247 (11th Cir. 1999) decided by the Eleventh Circuit and *Denmark v. RPM, Inc.*, 2014 WL 1254114 (M.D. Ga. Mar. 26, 2014) decided by this Court are not analogous to the current case before the Court. In *Mendoza*, the Eleventh Circuit affirmed the district court's grant of summary judgment based largely on the fact there was no genuine issue of material fact as to 3 of the 4 *Mendoza* factors identified previously and noted by the Court. *Mendoza,* 195 F.3d at 1248. In *Denmark,* this Court deemed the disclosure of details and sexual solicitations by a coworker of plaintiff and employee of defendant, as well as other employees whistling and attempting to flirt with plaintiff, were neither severe nor pervasive in part because of the nature of the offhand comments made by defendant's employees and given plaintiff's relationship with an employee responsible for much of the alleged harassment. *Denmark*, 2014 WL 1254114, at \*8-9.

Consistent with well-established Eleventh Circuit case law, this Court is tasked with evaluating whether a reasonable person would view the alleged harassment as severe and pervasive. In the view of the Court, there remains a genuine issue of material fact regarding whether or not Defendant's conduct was of a severe and pervasive nature objectively. In this case, according to Plaintiff, throughout her time working for Defendant she encountered sexual harassment. That harassment, as specified by Plaintiff, included conduct a jury could construe as more offensive to Plaintiff as a female than a man. In light of the manner some of the physical conduct was conducted, there remains a genuine issue of material fact as to whether or not Plaintiff was humiliated by Defendant's alleged harassing conduct. The Court finds there is sufficient evidence to possibly support a finding that the alleged harassment was subjectively and objectively severe and pervasive. Additionally, at this juncture the Court is not required to definitively determine whether or not alleged harassing conduct was severe

and pervasive as an objective matter. Instead, the Court is only obligated to ensure that a genuine issue of material fact remains that could suggest Defendant's alleged harassing conduct was severe and pervasive. As a consequence, Defendant's Motion on this ground is denied.

### D. Plaintiff's claims Defendant is responsible for alleged harassing conduct

Defendant's last argument as it relates to Plaintiff's hostile work environment claim is that it received neither actual nor constructive notice of Plaintiff's harassment. An employer can be responsible for creating a hostile work environment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002). In instances where "a supervisor with immediate or successively higher authority over the plaintiff's engages in harassment" an employer can be held strictly liable. *Lawrence v. Christian Mission Ctr, Inc. of Enter.*, 780 F.Supp.2d 1209, 1215 (M.D. Ala. 2011)(citing *Miller*, 277 F.3d at 1278). In the present case, there is a genuine issue of material fact as to whether David herself participated in conduct that could be construed as sexual harassment. Specifically, Plaintiff alleges that David participated in "frequently talking about sex in the office, making fun of Plaintiff's vagina, anal sex beads, Kegel exercises, sex toys, and sexual comments about men who work at the base." (Doc. 54 at 19.) Since it is undisputed that David was a supervisor for Defendant, a trier of fact could determine that Defendant should be held liable for the alleged harassment. The Court hereby finds that there is a genuine issue of material fact remaining with regards to this issue. As a result, the Court denies Defendant's summary judgment as it pertains to Plaintiff's hostile work environment claim.

### II. Plaintiff's Retaliation Claim

Defendant also asserts that Plaintiff's retaliation claim should be dismissed as a matter of law given Plaintiff's inability to establish a *prima facie case*. Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter (Title VII), or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. § 2000e-3(a)]." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 956 (11th Cir. 1997) (citing 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of

16

retaliation, a plaintiff must show (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the materially adverse action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). In the Eleventh Circuit, retaliation claims based on circumstantial evidence like here fall under the *McDonnell Douglas* burden-shifting framework. *Mulkey v. Bd. of Comm'rs of Gordon Cty.*, 488 F. App'x 384, 389 (11th Cir. 2012)(citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1162-63 (11th Cir. 1993)) . Under *McDonnell Douglas* burden-shifting, the plaintiff bears the initial burden of establishing her *prima facie case. Gardner v. Aviagen*, 454 F. App'x 724, 728 (11th Cir. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802–03). The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant does so, the plaintiff must make a showing that the nondiscriminatory reason was pretextual. *Id.*

Plaintiff is unable to establish a *prima facie case* for her retaliation claim because she cannot establish that the protected activity and the materially adverse action are causally connected. Plaintiff attempts to prove causation by referring to the proximity of her statutorily protected activity, in this case reporting sexual harassment to the EEO, with her suspension or termination. It is well established that when relying on temporal proximity alone, without more, the time between a statutorily protected activity and the adverse employment action, without more, must be very close. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)(citing *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)). Defendant is correct that even if the Court were to construe the adverse employment action as Plaintiff's suspension on July 30, 2013, some three and a half months after she reported the harassing conduct to Knox in the EEO department, the temporal proximity would still not be close enough.

Courts within the Eleventh Circuit have decided "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.*; *see also Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)("three months… is [not] sufficiently proximate to show causation"). Given the distant temporal proximity between the time she reported her sexual harassment allegations to Knox and Plaintiff's

17

suspension and termination, the Court concludes that Plaintiff is unable to establish a *prima facie case* for her retaliation claim. Defendant's Motion is granted as it relates to Plaintiff's retaliation charge.

### III.     Plaintiff's Negligent & Wrongful Retention claim

Defendant last argues that Plaintiff's negligent and wrongful retention should be dismissed. Under Georgia law, "[an] employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." O.C.G.A. § 34-7-20. "An employer additionally owes a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff." *Owens v. Stifel, Nicolaus & Co., Inc.*, 2014 WL 2769044 at *6 (M.D. Ga. June 18, 2014)(quoting *Munroe v. Universal Health Servs., Inc.*, 596 S.E.2d 604, 606 (Ga. 2004)). Courts decide whether an employer's efforts to investigate are done with ordinary care based on the unique facts of each case. *Id.* To sustain a claim for negligent retention, a plaintiff must prove that the employer knew or should have known that an employee had a propensity to engage in conduct causing plaintiff's injury. *Middlebrooks v. Hillcrest Foods, Inc.,* 256 F.3d 1241, 1247 (11th Cir. 2001); *Herrin Bus. Prods., Inc. v. Ergle*, 563 S.E.2d 442, 446 (Ga. Ct. App. 2002).

There is not a genuine issue of material fact that Defendant was unaware of McAllister's or David's alleged propensity for sexual harassment. While McAllister allegedly asked the color of Plaintiff's panties in front of others including HSSI supervisor Ward, and David knew about alleged sexual comments and harassment taking place at work, this is not enough to prove an employee for Defendant had a propensity to act in that way. For a Plaintiff to prevail under a negligent and wrongful retention theory, she must "show that the harm she suffered was 'within the risk' posed by the offending employee's tendencies." *Little-Thomas v. Select Specialty Hospital-Augusta, Inc.*, 773 S.E.2d 480, 483 (Ga. Ct. App. 2015). Devoid of evidence suggesting an employer knew or should have known that an employee previously engaged in conduct that allegedly caused plaintiff's present injuries, a court is

correct in granting summary judgment as it relates to a negligent retention claim. *Leo v. Waffle House, Inc.*, 681 S.E.2d 258, 262 (Ga. Ct. App. 2009).

While a trier of fact could conclude Plaintiff was harassed, there is no evidence that could lead a reasonable trier of fact to believe Defendant was aware of any employee's past or prior conduct that would lead Defendant to believe Plaintiff could be harassed. *Tomsic v. Marriot Intern., Inc.*, 739 S.E.2d 521, 529 (Noting that the Georgia Supreme Court "has rejected a 'but for' argument that that [an employer] provided [the employee] with the access or opportunity to injury [the plaintiff]. There must be sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly *incurred* by the plaintiff.")(citing *Munroe,* 596 S.E. 2d at 604, 606)(internal quotations omitted). As a result, Defendant's Motion is granted as it relates to Plaintiff's Negligent and Wrongful Retention claim.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment (Doc. 44) is **GRANTED IN PART** as to Plaintiff's retaliation and negligent and wrongful retention claims and **DENIED IN PART** as to Plaintiff's hostile work environment claim.

**SO ORDERED**, this   30th   day of September, 2015.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**